FILED

2016 NOV -9  PM 3: 24

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| PAULA MORRIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | MO-16-CV-0071-KC-LS |
| | § | |
| BEN SORENSON, RICK ARELLANO, | § | |
| and LETTY MANCHA, | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Paula Morris, proceeding *pro se*, filed an amended complaint alleging violations of her Fourth Amendment right to be free from unwarranted search and seizure.[1] [ECF No. 13] Before the Court are the Federal Rule of Civil Procedure Rule 12(b)(6) motions to dismiss of defendant Ben Sorenson [ECF No. 19], and defendants Rick Arellano and Letty Mancha [ECF No. 17]. Plaintiff has not filed a response to either motion to dismiss.[2] I recommend that Sorenson's motion to dismiss be DENIED, and that the motion to dismiss of Arellano and Mancha be GRANTED.

### FACTS AND PROCEDURAL HISTORY

Viewing the facts in Morris's amended complaint in the light most favorable to her,[3] and synthesizing the allegations in her complaint and attached affidavit, Midland, Texas police officer Ben Sorenson went to the front door of Morris's home at 9:00 a.m. on March 20, 2014, and rang the doorbell. Morris, home with the flu and still in her pajamas, was sitting in the family room in

---

[1] Attached as exhibits to Plaintiff's amended complaint are Plaintiff's affidavit setting forth the factual details of the events occurring on March 20, 2014, and a letter from the Midland Police Department. [ECF No. 13, Exhibits A, B]
[2] "[The] failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).
[3] *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199-200 (5th Cir. 2016)(courts reviewing Rule 12(b)(6) motions accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff).

the back of her home using her laptop computer. Her front door is not visible from the family room.

Seconds after the doorbell rang and before Morris could put her laptop computer down, Sorenson knocked on the front door. When Morris got up from her sofa, she took a few steps before she heard Sorenson turn the doorknob of the front door. Morris became alarmed because she usually keeps her front door locked and she did not yet know who was trying to open it. A few seconds later, Sorenson actually opened the front door, and Morris froze. She was trying to decide whether to escape the intruder through the back door, and could hear the busy traffic on the street outside her open front door. Morris did not say anything aloud because she did not want to alert the intruder that she was in the home.

Several seconds later, Morris heard a voice say, "Midland Police Department." Morris's dog reacted to the voice and ran toward the front door. Morris ran to the front door to grab her dog because she was worried the police officer would shoot the dog. Office Sorenson was "on the threshold," and defendants Rick Arellano and Letty Mancha were standing on Morris's "small door stoop within inches of [Sorenson]."

Morris saw Sorenson's gun on his hip and feared for her own life as well as her dog's. Sorenson "ordered" Morris to go outside. Morris responded by saying that her phone was on a table close by and that she wanted to get it to call the police. Sorenson refused to allow Morris to get her phone, and "took [her] outside and eventually to the curb by the street where [she] was then forced to sit by his police car." Sorenson was "forc[ing] [Morris] to do as he said."

2

Morris alleges that Arellano and Mancha were Midland City Code officers who "berat[ed]" her about vehicles parked on or near her driveway. After several minutes, a police supervisor arrived and "allowed [Morris] to go back into [her] home."

No defendant presented any warrant to Morris. She attaches to her amended complaint a May 20, 2014, letter from the Midland Chief of Police sustaining her formal complaint against Officer Sorenson and finding a "Violation of MPD Policy as Arrest, Search and Seizure."

Morris seeks monetary relief in her amended complaint because Sorenson, Arrellano, and Mancha, "under color of law," violated her Fourth Amendment search and seizure rights. Sorenson, alone, and Arrellano and Mancha, together, have pending motions to dismiss for failure to state a claim in which all also assert qualified immunity defenses.[4] Plaintiff has not responded to the defendants' pending motions to dismiss.

## DISCUSSION

### I. Rule 12(b)(6) Motions to Dismiss

Motions to dismiss under Rule 12(b)(6) for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level. . .on the

---

[4] Arellano and Mancha filed a motion to dismiss Morris's original complaint on April 25, 2016. [ECF No. 4] Morris filed a response on May 16, 2016. [ECF No. 6] On June 21, 2016, the District Court granted the defendants' motion, dismissed Morris's claims against Arellano and Mancha only, and allowed Morris to replead on or before July 20, 2016. [ECF No. 10]. Sorenson filed a motion to dismiss Morris's original complaint [ECF No. 11], but it was denied as moot because he filed it prior to Morris's amended complaint filing deadline. [ECF No. 16]

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (parenthetical in original).

When ruling on a 12(b)(6) motion, a court generally "may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). This is especially true when a plaintiff is proceeding *pro se*. *See Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (relying on *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983)).

## II. Claims under 42 U.S.C. § 1983

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* at 50. Claims against individual defendants in their official capacities are treated as claims against the governmental entities that employ them. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Personal involvement is required before liability will attach to a defendant in his individual capacity. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Additionally, there is no vicarious or *respondeat superior* liability of supervisors under Section 1983. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

Municipalities and other local government units may be sued under Section 1983 where the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation,

4

or decision officially adopted and promulgated by that local government's officers. *See Monell v. Dept. of Soc. Serv. of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5ᵗʰ Cir. 1997). These local government entities may also be liable where deprivations pursuant to governmental "custom," although not formally approved, have become so persistent and widespread by state officials they constitute custom or usage with the force of law. *Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id.* at 691.

## III.    Officer Ben Sorenson

### A.    Unconstitutional Search

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. When "the Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, ---, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013). At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961)). "Privacy expectations are most heightened" in the home and the surrounding area. *California v. Ciraolo*, 476 U.S. 207, 212-13, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986).

"A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause or exigent circumstances justify the encroachment." *United States v. Jones*, 239 F.3d 716, 719 (5ᵗʰ Cir. 2001). "The possibility that evidence will be removed

5

or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence." *Id.* at 720. It is the "physical entry of the home [which] is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585-86, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Never is the Fourth Amendment "zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Id.* at 589.

Viewed in the light most favorable to Morris, Officer Sorenson opened the front door to Morris's home without a warrant, and thereafter made a warrantless entry into her home to take her outside. Sorenson argues in his motion to dismiss that "[Morris] does not allege that Sorenson, Arellano or Mancha ever entered her home." [ECF No. 19, at 2]. Although Sorenson correctly argues that he was standing on Morris's threshold when Morris first saw him [ECF No. 13-1, at 1], and that Sorenson ordered Morris to come outside [*id.*], Sorenson then refused to allow Morris to retrieve her phone and thereafter "*took [her] outside* and eventually to the curb by the street where [she] was then forced to sit by his police car." *Id.* (emphasis added). Having alleged that Sorenson "took [her] outside," Morris has sufficiently pled that Sorenson intruded into Morris's home in violation of the Fourth Amendment, at least for purposes of a Rule 12(b)(6) analysis.

Even if Sorenson had not made a warrantless entry into Morris's home, his warrantless opening of the door, alone, constitutes a Fourth Amendment violation.[5] Sorenson argues in his

---

[5] With regard to the home, there is no "de minimis" exception to the Fourth Amendment. *Smith v. City of Wyoming*, 821 F.3d 697, 714 (6th Cir. 2016) (citing *Kyllo v. United States*, 533 U.S. 27, 37, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) ("[T]here is certainly no exception to the warrant requirement for the officer who barely cracks open the door. . ."); *Silverman v. United States*, 365 U.S. 505, 512, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961)(holding that an unauthorized intrusion only inches inside a home is "an actual intrusion into a constitutionally protected area"); *Covey v. Assessor of Ohio County*, 777 F.3d 186, 195 (4th Cir. 2015) (plaintiff stated plausible claim for Fourth Amendment violation where tax official opened front door of plaintiff's home and dropped a pamphlet inside; *Turk v. Comerford*, 488 F. App'x 933, 943 (6th Cir. 2012) (court found it not objectively reasonable for officers to interpret plaintiff's beginning to turn

dismissal motion that he merely conducted a permissible "knock and talk." "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Jardines*, 133 S. Ct. at 1416 (citing *Kentucky v. King*, 563 U.S. 452, 469, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011)). Whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. *King*, 563 U.S at 469-70. If the occupants behind the door choose not to speak, "the investigation will have reached a conspicuously low point." *Id.* at 470. Even "if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time." *Id.*

The Fifth Circuit holds that "when no one answers the door, the officers should end the knock and talk and 'change[] their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance.'" *United States v. Troop*, 514 F.3d 405, 410 (5th Cir. 2008)(citing *United States v. Gomez-Moreno*, 479 F.3d 350, 356 (5th Cir. 2007)). When no one answers the door, the Fourth Amendment proscribes anything beyond retreating, seeking a search warrant, or conducting further surveillance. *Id.* In *Troop*, the Fifth Circuit found a Fourth Amendment violation where, after no one answered the agents' knock on the door, the agents searched the curtilage of Troop's house and one agent reached inside a window to grab an occupant. *Id.* at 410-411. By the time the agent reached into a window to grab the occupant, the agent's "search had already exceeded the bounds of the Fourth Amendment" because the agents did not retreat, seek a warrant, or conduct further surveillance when no one answered the door. *Id.* at 411.

---

deadbolt on front door of home as unequivocal invitation to enter; officers had no reason to push door open).

In this case, Sorenson not only failed to retreat, seek a warrant, or conduct further surveillance when Morris did not answer his knock, he affirmatively opened Morris's door and "*took [her] outside*" without a warrant. If the agents in *Troop* violated Troop's Fourth Amendment rights by merely walking around the outside of his house when no one answered the agents' knock, Sorenson violated Morris's Fourth Amendment rights when he *opened her door* after she failed to respond to his knocking. "When no one respond[s] to the officers' knocking," it is even "impermissi[ble]…[to] check[] the knob on the door to the front house to determine if it would open." *Gomez-Moreno,* 479 F.3d at 355.

Sorenson argues in his dismissal motion that Morris makes no allegation that her house was actually searched. The Fifth Circuit made clear in *Troop* and *Gomez*, however, that a search in violation of the Fourth Amendment occurs when officers walk around a home, or merely check a doorknob, after receiving no response to their initial knock.

### B.      Unconstitutional Seizure

Sorenson also argues that Morris insufficiently alleges a seizure of her person. A seizure occurs when a reasonable person would feel that she was not free to leave in view of all circumstances surrounding the incident. *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003). A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller*, 520 U.S. 305, 308, 117 S. Ct. 1295, 137 L. Ed. 2d 513 (1997). A seizure may occur where coercive police behavior causes the individual to exit the home and surrender. *See United States v. Maez*, 872 F.2d 1444, 1451 (10th Cir. 1989); *Maloney v. County of Nassau*, 623 F.Supp.2d 277, 287-88 (E.D.N.Y. 2007) (court found seizure occurred where plaintiff's house was surrounded by teams of armed police demanding that he leave his home and

surrender). For a seizure to occur there must be a restraint of liberty either by physical force or by the individual's submission to the assertion of authority. *Fontenot v. Cormier*, 56 F.3d 669, 676 (5th Cir. 1995) (citing *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)).

Viewed in the light most favorable to Morris, Officer Sorenson opened the door of Morris's home, ordered her to come outside, had a gun on his hip, refused to allow Morris to retrieve a phone so that she could call the police, took Morris outside, and "forced [her] to sit by his police car…[for] several minutes." Morris remained compliant, under Sorenson's control, outside of her home and in her pajamas, in full view of her neighbors, until a supervisory policeman arrived on scene "and allowed [her] to go back into [her] home." Having been taken out of her home in her pajamas and forced to sit on the curb by Sorenson's police car until a supervisor released her, a reasonable person in Morris's person would have not felt free to leave. Morris has sufficiently alleged a warrantless seizure in violation of the Fourth Amendment, at least at the Rule 12(b)(6) stage.

### C. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In determining whether a defendant is entitled to qualified immunity, the court considers: 1) whether the plaintiff has alleged a violation of a constitutional right; and 2) whether the right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272

(2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d
565 (2009). The Court has discretion over which prong of the qualified immunity analysis to
address first in light of the circumstances of each case. *Pearson*, 555 U.S. at 236.

As explained above, Sorenson infringed upon Morris's Fourth Amendment right to be free
from an unreasonable search when he warrantlessly opened her door and entered Morris's home.
Indeed, the warrantless opening of the door, alone, constitutes a Fourth Amendment violation.
Sorenson also unlawfully seized Morris when he "took" her from her home, in her pajamas, and
forced her to sit by his police vehicle in full view of her neighbors until a supervisory police officer
released her. Accordingly, the first prong of the qualified immunity analysis is satisfied as to both
the unlawful search and unlawful seizure. As to the second prong, the caselaw cited above reflects
the law was clearly established in March of 2014 that Sorenson's unlawful search and his
subsequent seizure of Morris violated Morris's Fourth Amendment rights.

Although no case presents facts identical to what Morris alleges, her allegations make the
Fourth Amendment violations readily apparent. *See Estep v. Dallas Cnty., Tex.*, 310 F.3d 353,
360-61 (5th Cir. 2002) (citing *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998) (it is not necessary
that prior cases have held same particular action in question unlawful so long as unlawfulness is
apparent under pre-existing law)). As set out above, the law was clearly established at the time
relevant to this case such that a reasonable government official under the circumstances presented
would have fair notice and know that his conduct violated federal law. *See Hope v. Pelzer*, 536
U.S. 730, 741, 122 S.Ct. 2508, 153 L. Ed. 2d 666 (2002) (even in novel factual circumstances,
officials can still be on notice that their conduct violates clearly established law if prior decisions
give fair warning that their conduct was unconstitutional). A reasonable officer would have known

that opening Morris's door, entering her home, and warrantlessly removing her in her pajamas from her home to a police car would violate clearly-established Fourth Amendment law. At the Rule 12(b)(6) stage, at least, Sorenson is not entitled to qualified immunity.

## IV.    Rick Arellano and Letty Mancha

The District Court granted the first motion to dismiss that Arellano and Mancha filed, but granted Morris leave to re-plead. The only new allegations against Arellano and Mancha in Morris's amended complaint are:

> Letty Mancha and her 'supervisor' Rick Arellano had on this day handed code tickets and on 2 prior days had mailed multiple tickets showing that the actions of March 20, 2014 were not necessary but were meant to scare me. And it did. While being witnesses in Municipal court Lety and Rick attempted to protect his & her rights in court and became a "state actor" along with Ben Sorenson. [ECF No. 13, at 2]

I agree with Arellano and Mancha that Morris did not add any new facts in her amended complaint sufficient to state a viable claim against them. The new passage in her amended complaint does not remotely allege a Fourth Amendment search and seizure violation.

With respect to her original allegations, to the extent Morris asserts a claim that Arellano and Mancha berated her about the parked vehicles, that claim fails. Verbal abuse or harassment does not amount to a constitutional violation under Section 1983. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

If Morris seeks to assert some form of bystander liability as to Arellano and Mancha, that claim fails as well. "Bystander liability" may attach when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). "The rationale

underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Id*. at 647 (quoting *Randall*, 302 F.3d at 204 n.24).

Morris alleges that Arellano and Mancha were Midland City Code officers, not peace officers. Even viewed in the light most favorable to her, Morris's factual assertions do not establish that Arellano and Mancha knew Sorenson was violating Morris's rights, much less that they could or refused to do anything about it. Moreover, the law was not clearly established in March of 2014 that the bystander theory of liability was recognized in a non-excessive force context. *See Whitley*, 726 F.3d at 646 n.11; *Frakes v. Masden*, 2015 U.S. Dist. LEXIS 159158, 2015 WL 7583051 at *9 (S.D. Tex. Nov. 25, 2015). Accordingly, Morris fails to state a claim as to Arellano and Mancha, and they are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing report, I recommend that Sorenson's Motion to Dismiss be denied, and that the dismissal motion of Arellano and Mancha be granted.

SIGNED and ENTERED this 9th day of November, 2016.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**THE PARTIES HAVE FOURTEEN DAYS FROM SERVICE OF THIS REPORT AND RECOMMENDATION TO FILE WRITTEN OBJECTIONS. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). FAILURE TO FILE TIMELY OBJECTIONS MAY PRECLUDE APPELLATE REVIEW OF FACTUAL FINDINGS OR LEGAL CONCLUSIONS, EXCEPT FOR PLAIN ERROR. *ORTIZ V. CITY OF SAN ANTONIO FIRE DEP'T*, 806 F.3d 822, 825 (5th Cir. 2015).**